UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| 40 ACRES & 1 MULE, LLC and GO SCORE, LLC, on behalf of themselves and all others similarly situated | : : : : | |
| Plaintiffs, | : : | Civil Action No.:  3:22-cv-01215-VAB |
| v. | : : | |
| NETWORK SOLUTIONS, LLC, and WEB.COM GROUP, INC., | : : : | |
| Defendants. | : : : | December 1, 2022 |

## FIRST AMENDED CLASS ACTION COMPLAINT

**COUNT ONE (Violation of Conn. Gen. Stat. § 42-110b).**

1.    That at all times hereinafter mentioned, the Plaintiff, 40 Acres & 1 Mule, LLC, ("40 Acres" or "Plaintiff") is a Delaware limited liability company doing business in the State of Connecticut, with office address in Farmington, Connecticut.

2.    That at all times hereinafter mentioned, the Plaintiff, Go Score, LLC, ("Go Score" or "Plaintiff") is a Delaware limited liability company doing business in the State of Connecticut, with office address in Simsbury, Connecticut.

3.    That at all times hereinafter mentioned, the Defendant, Network Solutions,

LLC ("Network Solutions") is a Delaware limited liability company doing business in the State of Connecticut, with its corporate office located at 12808 Gran Bay Parkway, West, Jacksonville, Florida 32258.

4.    That at all times hereinafter mentioned, the Defendant, Web.Com Group, Inc is a Delaware limited liability company doing business in the State of Connecticut, with its corporate office at 12808 Gran Bay Parkway, West, Jacksonville, Florida 32258. Web. Com Group, Inc is the owner and member of Network Solutions, LLC. Web. Com Group, Inc is also referred to herein as "Network Solutions."

5.    Network Solutions provides Domain name registration, Web hosting, Web site design, Search engine marketing, SSL certificates and E-mail hosting services and products to individual and corporate consumers in the United States.

6.    On August 22, 2019, the undersigned counsel for the Plaintiff purchased on behalf of the Plaintiff, the domain names, **"40acres1mule.com"** and **"40acresand1mule.com"** using Plaintiff's name. Network Solutions received payments for the two domain names. Each of the domain names were registered with Network Solutions and each has a 1 year expiration date, 2020-08-22. See, Network Solution Order Confirmation Email dated August 22, 2019, at 11:20 AM, attached herewith as **Exhibit 1**.

7.    On September 10, 2019, two additional domain names, **"fortyacresonemule.com"** and **"fortyacresandonemule.com"** were purchased for Plaintiff, using Plaintiff's name. Network Solutions received payments for the two domain

names. Each of these two additional domain names were registered with Network Solutions and each has a 1 year expiration date, 2020-09-10. See, Network Solution Order Confirmation Emails dated September 10, 2019, at 2:40 PM and 2:43 PM, respectively, attached herewith as **Exhibit 2** and **Exhibit 3**.

8.   In August 2019, information technology developers were hired to begin construction of it website using the domain name, www.40acres1mule.com. The website platform sought to  "dramatize, collect, disseminate and display information for the debt the people of the United States owe to African-American citizens for uncompensated slave labor  in the period 1790 to 1860, for unhuman treatment in the period, 1790 to 1860 and for Jim Crow terrorism, lynches and destruction of property for the period 1877 to 1968…" See, Proposal to Develop Social Media Platforms for Reparation Debt, attached herewith as **Exhibit 4**.

9.   The four domain names were enrolled in Network Solutions' auto-new service. As such, before the expiration terms for **"40acres1mule.com"** and **"40acresand1mule.com"** ended, these domain names were auto-renewed on June 23, 2020. The new expiration dates were 2021-08-22. Network Solutions charged $37.99 for each renewal. See, Network Solution Order Confirmation Email dated June 23, 2020, at 4:32 PM, attached herewith as **Exhibit 5**.

10. The other two additional domain names were auto-renewed on July 12, 2020,

and their new expiration extended by 1 year to 2021-09-10. Network Solutions also charged $37.99 for each renewal. Because Network Solutions overcharged for each of the renewals by $15.00, Network Solutions issued a $30.00 refund for these two domains. See, Network Solution Refund Confirmation Email dated July 18, 2020, at 12:46 PM, attached herewith as **Exhibit 6.** Network Solutions issued additional Refunds on July 28, 2020, for overcharging when it used its auto-renew service to renew Plaintiff's other domain names and web hosting service.

11. Again before the second expiration terms for **"40acres1mule.com"** and **"40acresand1mule.com"** ended, these domain names were auto-renewed on June 23, 2021. **The new expiration dates were 2022-08-22.** Network Solutions charged $37.99 for each renewal. See, Network Solution Order Confirmation Email dated June 23, 2021, at 4:36 AM, attached herewith as **Exhibit 7**.

12. Again, because Network Solutions overcharged for each of these two renewals by $16.00, Network Solutions issued two refunds for $16.00 each for these two domains. See, Network Solution Refund Confirmation Email dated June 24, 2021, at 12:45 AM and 12:46 AM, attached herewith as **Exhibit 8** and **Exhibit 9,** respectively.

13. The other two additional domain names were auto-renewed on June 25, 2021, and their new expiration extended by 1 year to 2022-09-10.

14. After Plaintiff's information technology ("IT") developers completed the

construction of Plaintiff's website www.40acres1mule.com, and going "live" online, using the domain name, **"40acres1mule.com,"** the IT developers recommended that Plaintiff move the website's server to another independent web hosting server outside of Network Solutions. Consequently an "SSL Certificate" was required and purchased. See, Network Solution Order Confirmation Email dated October 5, 2021, at 3:05 PM, attached herewith as **Exhibit 10**. Network Solutions then changed the domain server for **"40acres1mule.com"** to a new independent server, "NS1.PHASE3SOLUTION.COM" and "NS2.PHASE3SOLUTION.COM." See, Network Solution Confirmation of DNS Change Email dated April 7, 2022, at 2:41 PM, attached herewith as **Exhibit 11**.

15. Again before the third expiration terms for **"40acres1mule.com"** and **"40acresand1mule.com"** ended, these two domain names were auto-renewed on June 23, 2022.

16. Subsequently, Network Solutions on August 3, 2022, at 4:10 PM, Network Solutions had fraudulently and in bad faith scrubbed the email of its content as a cover up for deleting the domain name **"40acres1mule.com."** See, Network Solution "Order Confirmation is Confirmed" Email dated June 23, 2022, at 4:57 AM, attached herewith as **Exhibit 12.**

17. Again, because Network Solutions overcharged for each of these two renewals, Network Solutions issued a refund for these two domains.

18. Once again, Network Solutions on August 3, 2022, at 4:11 PM, Network

Solutions had also fraudulently and in bad faith scrubbed the email of its content as a cover up for deleting the domain name **"40acres1mule.com."** See, Network Solution Refund Confirmation Email dated June 24, 2022, at 1:18 AM, attached herewith as **Exhibit 13.**

19. On July 13, 2022, the website, [www.40acres1mule.com](www.40acres1mule.com), was no longer online because it had been erased. In its place, Network Solutions displayed the following page (also attached here as **Exhibit 16**):



20. Unbeknownst to Network Solutions, Plaintiff kept a copy of the email from Network Solutions confirming that the domain names **"40acres1mule.com"** and **"40acresand1mule.com"** were auto-renewed on June 23, 2022, and Network Solutions charged $42.99 for each renewal. **The new expiration dates are 2023-08-22.** See, Network Solution "Order Confirmation is Confirmed" Email dated June 23, 2022, attached herewith as **Exhibit 14.**

21. As is Network Solutions' fraudulent and bad faith practice, Network Solutions overcharged for each of these two renewals, Network Solutions issued a refund of $32.99 for these two domains names. See, Screenshot of Credit Card Account ending 0960, showing Network Solution's refund on June 25, 2022, attached herewith as **Exhibit 15**.

22. On July 15, 2022, Network Solution by telephone to explain to Plaintiff's representative why the website was erased from online. At the end of the telephone discussion, Network Solution agent sent the following email:

> **<webwb_NetworkSolutionsLogo.jpg>**
>
> **Dear Nitor,**
>
> **Thank you for contacting Network Solutions. We are committed to creating the best experience for you.**
>
> **This message is to let you know that the issue you reported to Network Solutions has been reviewed.**

**S-1983859 . This will be your ticket number.**

**Please accept our apologies for any inconvenience this may have caused.**

**I hope this information has been helpful. We appreciate your business!**

**For questions, please visit our online support center at https://help.networksolutions.com**

**Kind Regards,**

**Philip Z**

**Customer Support**

Network Solutions email on July 15, 2022, at 7:41 AM is attached herewith as **Exhibit 17**.

23. After receiving the email from Network Solutions' agent Philip Z, Plaintiff's representative forwarded this email to the chief IT developer for the Plaintiff, and narrated contemporaneously what Philip Z stated over the telephone a few minutes earlier as follows:

**"Hi Amit, see below for email from Network Solutions.**

**I just got off the phone with network Solutions. The agent I spoke to is Philip. He is working out of the office in Philippines. He explained that when they processed the price adjustment from $42.99 to $21.99 for the renewal, the agent mistakenly rolled back the expiration to June 23, 2022, even though the domain due to expire in August 2022. He said the agent**

**forgot to change the date to August 2023 after he charged the correct renewal fee of $21.99. Because of the roll back and failure to change the date to August 2023, the domain was placed on their deleted list! Someone then automatically grabbed the domain and registered it under the name of the company in Pennsylvania. Philip then created a ticket, reference # S1983859 to expedite the recovery of the domain.**

**I told Philip I plan to file a claim with their legal department for damages."**

Undersigned counsel's mail on July 15, 2022, at 7:52 AM, is attached herewith as **Exhibit 18**.

24. Network Solutions fraudulently and in bad faith took and kept Plaintiff's unexpired domain name, **"40acres1mule.com"** which Plaintiff renewed and paid for the renewal. Network Solutions erased Plaintiff's website, www.40acres1mule.com, from online access.

25. As of the date of this Complaint, Network Solutions refused to return the domain name, **"40acres1mule.com"** and refused to restore the website, www.40acres1mule.com to the servers that Plaintiff paid for as explained ¶ 14, supra.

26. Upon information and belief, Network Solutions' agent(s) deleted the domain name **"40acres1mule.com"** that had the reparations website, www.40acres1mule.com, that displayed African Americans cause for reparations for slavery.

27. Network Solutions' agent(s) however did not delete the domain name

**"40acresand1mule.com"** which did not have a reparations website.

28. Network Solutions then replaced the reparations online display with non-Reparations, non-African American display. See, Exhibit 16.

29. Network Solutions deleted only domain name **"40acres1mule.com"** and not the domain name **"40acresand1mule.com"** because the domain name, **"40acres1mule.com"** had the reparations website, www.40acres1mule.com, that displayed African Americans' cause for reparations for slavery.

30. At all times relevant herein, the Defendant has been engaged in the trade or commerce of advertising for sale, the offering for sale and the sale of domain names and other web hosting services to consumer in the State of Connecticut, and the advertising for sale, offering for sale and the sale of such domain names and other web hosting services constitutes the primary trade or commerce of the Defendant.

31. The conduct of the Defendant alleged in this count constitutes a deceptive act or practice within the meaning of Conn. Gen. Stat. § 42-110b(a), in the conduct of the trade or commerce alleged in this count in that said conduct constitutes a material misrepresentation or omission likely to mislead a consumer acting reasonably under the circumstances.

32. The conduct of the Defendant alleged in this count constitutes a violation of Conn. Gen. Stat. § 46a-58(a), stating, "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the

deprivation of any rights, privileges or immunities, secured or protected by the Constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, gender identity or expression, sexual orientation, blindness, mental disability, physical disability or status as a veteran."

33.  The conduct of the Defendant alleged in this count constituted an intentional and wanton violation of the Plaintiff's rights or was done with a reckless indifference to those rights in that the Defendant knew that its representations and omissions were false or misleading or was recklessly indifferent to their truth or completeness and that its refusal to return  the domain name "40acres1mule.com" was without reasonable justification or excuse.

34. The conduct of the Defendant alleged in this count constitutes an unfair act or practice within the meaning of Conn. Gen. Stat. § 42-110b(a) in the conduct of the trade or commerce alleged in this count in that said conduct violates public policy, is immoral, unethical or unscrupulous, and is substantially injurious to consumers, including the Plaintiff.

35. As a result of the conduct of the Defendant alleged in this count, the Plaintiff has suffered an ascertainable loss of money or property, including the loss of the accumulated users and ecommerce business of the deleted the website, www.40acres1mule.com.

**COUNT TWO** **(Violation of 42 U.S.C.A. § 1981).**

36. Paragraphs 1-35 of Count One are hereby made paragraphs 1-35 of this Count Two as if more fully set forth herein.

37. Network Solutions did not delete any of the other three unexpired domain names mentioned above even though they too were renewed on the same day or at around the same time.

38. Instead Network Solutions targeted and deleted the unexpired domain name **"40acres1mule"** because it had a developed website www.40acres1mule.com that displayed African Americans cause for reparations for slavery.

39. Network Solution's employee(s) or agent(s) knew the website www.40acres1mule.com was live and displaying a live reparations debt clock for uncompensated slave labor for African Americans.

40. Typically, Network Solution's employee(s) or agent(s) would ask the undersigned at the times they processed the refunds for the overcharges if a website had been developed for the domain names. And if so, what the website was all about. Network Solution's employee(s) or agent(s) would access the website to confirm that the website was live.

41. In June 2022, Network Solution's employee(s) or agent(s) deleted and took the domain name **"40acres1mule"** and then registered this domain name with its sister company, New Ventures Services Corp. using a Post Office box in Drums, Pennsylvania. Network Solutions also has offices at 10 Azalea Road, Drums Pennsylvania, 18222-2154.

42. Network Solution's employee(s) or agent(s) knew that by deleting and taking this domain name **"40acres1mule,"** the website www.40acres1mule.com which was displaying the reparations debt clock on its homepage as follows (also attached here as **Exhibit 19**) would be deleted and erased from the internet:



**US REPARATIONS DEBT**

**15,500,100,000,838**

UNCOMPENSATED SLAVE LABOR

MORE >

If we are true to our Declaration that "We hold these Truths to be self-evident, that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the Pursuit of Happiness...." then we must restore to our people whose "Inalienable Rights" to Life, Liberty and Pursuit of Happiness" we took or allowed to be taken from them without their consent or just cause. To restore these "Inalienable Rights" which we took or allowed to be taken from our people without their consent or just cause, we must pay the reparations debt we owe to them by giving their descendants their inheritances that would



43. In place of the reparations debt clock display above which Network Solutions deleted and erased from the internet, Network Solution's employee(s) or agent(s) created a new website www.40acres1mule.com to display real estate and other non-African American, non-reparations display as follows (also see Exhibit 16):

**The domain 40acres1mule.com may be for sale.**
**Please click here to inquire**



**40acres1mule.com**

Related Searches:

▶  **real estate**

▶  **apartment for rent**

▶  **personals**

▶  **cheap airfare**

▶  **vacation packages**

▶  **vegas vacation**

🅰A    🔒 40acres1mule.com

44. The conduct of Network Solution's employee(s) or agent(s) was vile, bigoted and biased on account of race or color of the subject matter displayed in Exhibit 19, supra.

45. Network Solutions' agent(s) deleted the domain name **"40acres1mule.com"** that had the reparations website, [www.40acres1mule.com](www.40acres1mule.com) that displayed African Americans' cause for reparations for slavery.

46. Network Solutions' agent(s) however did not delete the domain name **"40acresand1mule.com"** which did not have a reparations website.

47. Network Solutions then replaced the reparations online display with non-Reparations, non-African American display. Compare Exhibit 16.

48. Network Solutions deleted only domain name **"40acres1mule.com"** and not the domain name **"40acresand1mule.com"** because the domain name, **"40acres1mule.com"** had the reparations website, [www.40acres1mule.com](www.40acres1mule.com), that displayed African Americans' cause for reparations for slavery.

49. Upon information and belief Network Solution's employee(s) or agent(s) knew of Plaintiff's reparations platform and harbored racial animus for the Plaintiff's reparations when they intentionally knocked down and erased Plaintiff's reparations website from the internet

50. Based on the foregoing facts, Defendant deprived Plaintiff of the same right

to make and enforce contracts, and to the full and equal benefit of all laws and proceedings

for the security of persons and property as is enjoyed by white citizens, in violation of 42

U.S.C.A. § 1981.

**COUNT THREE (Violation of 42 U.S.C.A. § 1982).**

51. Paragraphs 1-50 of Count Two are hereby made paragraphs 1-50 of this Count

Three as if more fully set forth herein.

52. Based on the foregoing facts, Defendant deprived Plaintiff of the same right,

as is enjoyed by white citizens thereof to hold a personal property such as the website

www.40acres1mule.com to "dramatize, collect, disseminate and display the reparations

debt clock showing the growing debt the people of the United States owe to African-

American citizens for uncompensated slave labor," in violation of 42 U.S.C.A. § 1982.

**COUNT FOUR (Class Action for Violation of 18 U.S.C.A. § 1030).**

53. Paragraphs 1-50 of Count Two are hereby made paragraphs 1-50 of this Count

Four as if more fully set forth herein.

54. The jurisdiction of this Court is based upon 28 U.S.C. § 1331, and this Court

has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §l 332(d) because

this is a class action where the amount in controversy exceeds $5,000,000, exclusive of

interest and costs, ·and because at least one member of the proposed class is a citizen of a

state different from the defendant, and supplementary jurisdiction pursuant to 28 U.S.C. §

1367. Venue is already proper in this judicial district under the civil rights counts.

55. Defendants typically log into accounts held by account holders ("Customers" or "Class members") in the Defendants' computer database network system used in or affecting interstate or foreign commerce ("Protected Computer").

56. Defendants would then transmit a program, information, codes or command into the Protected Computer that deletes the Customer's unexpired domain names held in the accounts maintained in the Protected Computer.

57. Defendants further transmit a program, code, information or command that immediately transfers and registers the deleted domain names to another account or accounts maintained in the Protected Computer for New Ventures Services, Corp. New Ventures Services, an affiliate or subsidiary of the Defendants.

58. After taking Customers' unexpired domain name from Customers' account maintained in the Protected Computer, Defendants typically transmit in interstate or foreign commerce, communication containing a demand or request for money from the victimized Customers.

59. Defendants typically demand money from the victimized Customers in the form of a redemption fee of $350 in addition to a buyback fee of $8,000 or more. As a result of Defendants' offense in this case, Customers or the Class members suffered aggregate damages in excess of $5,000.

60. Defendants have inserted clauses in their master services agreement and other

such unilateral agreements with their customers to limit the statutory rights in statutes such as the CFAA for their protection against fraud, extortion or other crimes. Defendants master service agreement and other unilateral agreements are unconscionable and void as to the victimized Customers as a result these CFAA violations.

61. For an example of a victimized Customer, on June 23, 2022, Defendants logged into an account maintained in the Protected Computer for the Plaintiff, Go Score, the identified 'Account Holder' in the Protected Computer.

62. Defendants then transmitted a program, information, code, or command into the Protected Computer to delete Go Score's unexpired domain name, <40acres1mule.com> held in Go Score's account maintained in the Protected Computer.

63. Defendants further transmitted a program, information, code, or command that immediately transferred and registered the deleted domain name, <40acres1mule.com> to an account Defendants maintained in the Protected Computer for their subsidiary company, New Ventures Services Corp.

64. Then, after deleting and taking Go Score's domain name, <40acres1mule.com> Defendants then transmitted communication to Go Score's manager on July 17, 2022, demanding or requesting for initial money, redemption service fee of $350 "to attempt to recover" the domain name from New Ventures Services Corp.

65. Because Go Score refused to pay the initial demand or request for money so for

the Defendants "to attempt to recover" domain name, <40acres1mule.com>, Defendants did not have the chance to demand or request a buyback fee for the domain name, <40acres1mule.com.

66. Defendants then kept the domain name <40acres1mule.com> to themselves, refusing to return it to Go Score's until Go Score served Defendants with a civil action lawsuit complaint on August 5, 2022.

67. After receiving the civil action complaint, Defendants immediately returned the domain name, <40acres1mule.com> to Go Score's account maintained in the Protected Computer.

68. The Plaintiff, Go Score suffered a loss of at least $5,000 including the cost of responding to Defendants' offense under the CFAA, conducting a damage assessment, and restoring the data or information - domain name, <40acres1mule.com> - to its condition prior to the offense, and the revenue lost, cost incurred, or other consequential damages incurred because of interruption of the domain name, <40acres1mule.com service and the interruption from the internet of the website, www.40acres1mule.com, that is connected to the domain name, <40acres1mule.com.

69. Plaintiff, Go Score brings this action count as a class action on behalf of itself and others similarly situated, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Class") consisting of all persons and entities who suffered at least $5,000 in damage or loss, arising from Defendants' violation of the 18

U.S.C. § 1030 of the Computer Fraud and Abuse Act, ("CFAA"), during the period of September 6, 2020, until the date of final judgment in this matter.

70. The exact number of Class members can only be determined from Defendant's records. Upon information and belief, there are thousands of Class members geographically dispersed throughout the United States. As such, the Class is so numerous that joinder of all members is impracticable.

71. There are questions of law and fact common to the Class, including:

    a.  whether Defendants intended to defraud, exceeding their access to Protected Computer by furthering their intended fraud and taking and obtaining for themselves, Class members' domain names, in violation of 18 U.S.C. § 1030(a)(4);

    b.  whether Defendants transmitted a program, information, code or command to delete Class members' domain names, and to intentionally take the Class members' domain names, causing damage to Class members' accounts within the Protected Computer, without Class members' consent, in violation of 18 U.S.C. § 1030(a)(5)(A);

    c.  whether Defendants intended to extort money from Class members, when, after deleting and taking Class members' unexpired domain names from Class members' account within

the Protected Computer, Defendants transmitted in interstate or foreign commerce, communication containing a demand or request for money from Class members for the return of unexpired domain names to the Class members' account within the Protected Computer, in violation of 18 U.S.C. § 1030(a)(7)(C) or;

d. whether Class members suffered a loss of at least $5,000 including the cost of responding to Defendants' offense under the CFAA, conducting a damage assessment, and restoring the data or information to its condition prior to the offense, and the revenue lost, cost incurred, or other consequential damages incurred because of interruption of service under 18 U.S.C. § 1030(g).

72. Plaintiff, Go Score's claims are typical of those of the class members. Plaintiff's claims encompass the challenged offenses of Defendants. Furthermore, Plaintiff's legal claims are based on the same legal theories as the claims of the Class members. The legal issues as to which the CFAA is violated by such conduct apply equally to Plaintiff, Go Score and to the Class.

73. The Plaintiff, Go Score will fairly and adequately protect the interests of the

Class. The Plaintiff's claims are not antagonistic to those of the Class and the Plaintiff has hired counsel skilled in the prosecution of class actions.

74. Common questions of law and fact predominate over questions affecting only individuals or entities in that Defendants have acted on grounds generally applicable to the entire Class.

75. A class action is superior to all other available methods for the fair and efficient adjudication of the controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small in comparison to the costs of individual litigation to vindicate their rights, the expense and burden of individual litigation make it virtually impossible for the members of the Class individually to redress the wrongs done to them. There will be no difficulty in the management of the action as a class action.

**WHEREFORE**, the Plaintiffs, on behalf of themselves and the Class, claim:

1. The Court enter judgment in favor of Plaintiffs and the Class against Defendants;

2. Return of the domain name, www.40acres1mule.com;

3. Monetary damages;

4. Punitive damages;

5. Double or treble damages pursuant to Conn. Gen. Stat. § 42-110g;

6. Costs and reasonable attorney's fees;

7. Costs and reasonable attorney's fees pursuant to Conn. Gen. Stat. § 42-110g;

8. The Court declare this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

9. That Plaintiffs and the other members of the Class recover their damages against Defendants in an amount to be determined, together with interest;

10. That Plaintiffs and the other members of the Class recover their costs of this suit, including reasonable attorneys' fees and;

11. That Plaintiffs and the other members of the Class be granted such other relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable in this case.

PLAINTIFFS,
40 Acres & 1 Mule, LLC
Go Score, LLC, on behalf of themselves
and all others similarly situated


By:_____
Nitor Egbarin, ct05114
Law Office of Nitor V. Egbarin, LLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 860-249-7180
Fax: 860-408-1471
Mobile: 860-680-1448
Email: NEgbarin@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2022, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail for anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

By: */s/ Nitor V. Egbarin*
Nitor V. Egbarin